WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Richard W. Slack

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------- x | | Case No. |
| | : | 1:09-cv-06841-LTS |
| In re | : | |
| | : | |
| | : | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| ------------------------------------------------------------- x | | |
| | : | |
| KA KIN WONG, SIU LUI CHING, CHUN IP, | : | |
| JIN LIU, YIN YING LEUNG, LAI MEI CHAN | : | |
| and SING HEUNG, On Behalf of Themselves | : | |
| and All Others Similarly Situated, | : | |
| | : | |
| Plaintiffs, | : | |
| -against- | : | Adversary Proceeding |
| | : | No.: 09-01120 (JMP) |
| HSBC USA, INC., HSBC BANK PLC, PACIFIC | : | |
| INTERNATIONAL FINANCE LIMITED, HSBC | : | |
| BANK (CAYMAN) LIMITED (f/k/a HSBC | : | |
| FINANCIAL SERVICES (CAYMAN) LTD.), HSBC | : | |
| HOLDINGS PLC, SCOTT AITKEN, CEREITA | : | |
| LAWRENCE, SARAH COOMBS, JANET | : | |
| CRAWSHAW, SYLVIA LEWIS, THE BANK OF | : | |
| NEW YORK MELLON CORPORATION and | : | |
| LEHMAN BROTHERS SPECIAL FINANCING INC., | : | |
| | : | |
| Defendants. | : | |
| ------------------------------------------------------------- x | | |

## DEFENDANT LEHMAN BROTHERS SPECIAL FINANCING
## INC.'S RESPONSE TO MOTION TO WITHDRAW REFERENCE
## OF ADVERSARY PROCEEDING TO BANKRUPTCY COURT

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ........................................................................... 1

II.  RELEVANT FACTUAL BACKGROUND ........................................................ 3

    A.  The Complaint Recognizes that this is a Core Proceeding ........................ 3

    B.  Plaintiffs Participated Actively in the Bankruptcy Proceedings ................ 4

    C.  Plaintiffs Seek to Change the Forum After LBSF Filed a Motion to Dismiss, and the Bankruptcy Court Made Rulings Adverse to Plaintiffs ................................................................................................. 5

III.  ARGUMENT AND AUTHORITIES .................................................................. 7

    A.  Standard for Withdrawal of the Reference ................................................ 7

    B.  The Motion Should Be Denied Because the Matter Is a Core Proceeding ................................................................................................. 8

        1.  The Bankruptcy Court Should Make the Determination Regarding Whether this is a Core Proceeding ............................. 10

        2.  As Plaintiffs Recognize in the Complaint, the Adversary Proceeding Is a Core Proceeding ................................................ 12

    C.  Plaintiffs Waived the Right to Change the Forum by Initiating This Lawsuit in the Bankruptcy Court ............................................................ 15

    D.  The Motion Is a Blatant Attempt at Forum Shopping ............................. 17

    E.  The Motion Is Premature Until the Case is Trial Ready .......................... 19

IV.  CONCLUSION AND REQUESTED RELIEF ................................................. 23

# TABLE OF AUTHORITIES

## <u>CASES</u>

*In re 610 W. 142 Owners Corp.*,
219 B.R. 363 (Bankr. S.D.N.Y. 1998) ..............................................................13

*Abramowitz v. Palmer*,
999 F.2d 1274 (8th Cir. 1993) ..........................................................................16

*In re Adelphia Comm'ns Corp. Sec. & Derivative Litig.*,
No. 03 MDL 1529 (LMM), 05 CIV 9285, 05 CIV 9050,
05 CIV 9250, 2006 WL 337667 (S.D.N.Y. Feb. 10, 2006).......................18, 19

*In re Ames Dep't Stores, Inc.*,
190 B.R. 157 (S.D.N.Y. 1995).......................................................20, 21, 22, 23

*Anesthesia Assocs. of Mount Kisco, LLP v. N. Westchester Hosp. Ctr.*,
59 A.D.3d 481 (N.Y. App. Div. 2009) .............................................................21

*In re Argo Comm'ns Corp.*,
No. 91 CV 7226 (MJL), 1992 WL 75144 (S.D.N.Y. Mar. 30, 1992) .................8

*In re Arnold Print Works, Inc.*,
815 F.2d 165 (1st Cir. 1987)..............................................................................12

*Bambu Sales, Inc. v. Stern*,
No. 98 CV 1952 (NG), 1998 WL 760335 (E.D.N.Y. Sept. 1, 1998).................9

*In re Ben Cooper, Inc.*,
896 F.2d 1394 (2d Cir. 1990), *vacated*, 498 U.S. 964 (1990),
*opinion reinstated*, 964 F.2d 36 (2d Cir. 1991) ...............................................12

*C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*,
177 B.R. 760 (N.D.N.Y. 1995) ..........................................................................11

*Cohen v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*
(*In re County Seat Stores, Inc.*), No. 01 Civ. 2966 (JGK),
2002 WL 141875 (S.D.N.Y. Jan. 31, 2002) ......................................................22

*In re Corson Mfg. Co.*,
No. 01-MC-5E, 99-16855K, AP 00-1366K,
2001 WL 877394 (W.D.N.Y. June 27, 2001)....................................................20

*Design Strategies, Inc. v. Davis*,
    367 F. Supp. 2d 630 (S.D.N.Y. 2005), *aff'd*, 469 F.3d 284 (2d Cir. 2006) ......................21

*Drew v. Worldcom, Inc.*,
    No. 06 Civ. 3407 (JGK), 2006 WL 2129309 (S.D.N.Y. July 26, 2006) ...................18, 19

*In re Enron Corp.*,
    No. 03 Civ. 9312 (LTS), 2007 WL 102085 (S.D.N.Y. Jan. 12, 2004) .............................10

*In re Enron Corp.*,
    No. 04 Civ. 7693(RJH), 2004 WL 2912893 (S.D.N.Y. Dec. 14, 2004)......................19, 20

*In re Enron Corp.*,
    No. 03 CIV 5078 (DLC), 2003 WL 22171695 (S.D.N.Y. Sept. 22, 2003) ................11, 20

*In re Formica Corp.*,
    305 B.R. 147 (S.D.N.Y. 2004)...............................................................................8, 20, 22

*Hassett v. Citicorp N. Am., Inc. (In re CIS Corp.)*,
    188 B.R. 873 (S.D.N.Y. 1995).........................................................................................17

*Hassett v. Indiana Bell Tel. Co. (In re CIS Corp.)*,
    Nos. 89 B 10073, 10074, 10075, 10076, 10077, 10078, 10079,
    92 Civ. 2740, 91-6366A, 1992 WL 176482 (S.D.N.Y. July 17, 1992) ............................11

*Hawaiian Airlines, Inc. v. Mesa Air Group, Iinc.*,
    355 B.R. 214 (D. Haw. 2006) .........................................................................................22

*Horwitz v. Alloy Auto. Co.*,
    992 F.2d 100 (7th Cir. 1993) ..........................................................................................16

*In re Ionosphere Clubs, Inc.*,
    No. 89 B 10448 (BRL), 89 B 10449 (BRL), 89 B 10287 (BRL),
    92-1150A, 93 CIV 1260 (CSH), 1994 WL 132236
    (S.D.N.Y. April 14, 1994) ...............................................................................................20

*Keene Corp. v. Williams Bailey & Wesner L.L.P.* (*In re Keene Corp.*),
    182 B.R. 379 (S.D.N.Y. 1995) (S.D.N.Y. 1992) .............................................................23

*Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.)*,
    136 B.R. 59 (S.D.N.Y. 1992).........................................................................8, 17, 20, 21

*In re Leco Enters., Inc.*,
    144 B.R. 244 (S.D.N.Y. 1992).........................................................................................9

*In re Lombard-Wall Inc.*,
    48 B.R. 986 ( S.D.N.Y. 1985)......................................................................................15

*In re Magnesium Corp. of Am.*,
    No. 01-B-14312 (REG), 2004 WL 1161172 (S.D.N.Y. May 24, 2004)......................9, 20

*Mishkin v. Ageloff (In re Adler, Coleman Clearing Corp.)*,
    270 B.R. 562 (S.D.N.Y. 2001).................................................................................23

*In re Neuman*,
    71 B.R. 567 ( S.D.N.Y. 1987).............................................................................13, 21

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
    458 U.S. 50 (1982)......................................................................................................9

*Official Committee of Unsecured Creditors v. Lay (In re Enron Corp.)*,
    295 B.R. 21 (S.D.N.Y. 2003).......................................................................................8

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
    4 F.3d 1095 (2d Cir. 1993)...............................................................................7, 8, 21

*In re Paula Saker & Co., Inc.*,
    37 B.R. 802 (Bankr. S.D.N.Y. 1984).........................................................................21

*Prisco v. State of N.Y.*,
    No. 91 Civ 3990(RLC), 1995 WL 693251 (S.D.N.Y. Nov. 22, 1995)............................21

*Ranch 1 Metro, Inc. v. State Nat'l Ins. Co. (In re Ranch 1 Inc.)*,
    Nos. 02 Civ. 4417, 01 B 41853, 2002 WL 31175184
    (S.D.N.Y. Sept. 27, 2002).........................................................................................10

*In re S.G. Phillips Constructors, Inc.*,
    45 F.3d 702 (2d Cir. 1995)..........................................................................................9

*S. Street Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.)*,
    94 F.3d 755 (2d Cir. 1996)..........................................................................................8

*In re STN Enters., Inc.*,
    73 B.R. 470 (Bankr. D. Vt. 1987)...............................................................................16

*In re Solutia*,
    No. 04 CIV. 2842 (WHP), 2004 WL 1661115 (S.D.N.Y. July 27, 2004).......................18

*In re Steffan*,
    97 B.R. 741 (Bankr. N.D.N.Y. 1989) ........................................................................13

*In re Times Circle E., Inc.*,
    No. 94 V 455593 (TLB, 95 CIV 2938 (SHS), Adv. No. 95/8248A,
    1995 WL 489551 (S.D.N.Y. Aug. 15, 1995)...................................................................20

*In re United States Lines, Inc.*,
    197 F.3d 631 (2d Cir. 1999)...........................................................................................12

*Wood v. Wood (In re Wood)*,
    825 F.2d 90 (5th Cir. 1987) ............................................................................................9

## **STATUTES/RULES**

28 U.S.C. § 157(b)(3) .......................................................................................................10

28 U.S.C. § 157(d) ..............................................................................................7, 8, 12, 15, 18

Fed. R. Civ. P. 26(F)...........................................................................................................17

## **OTHER**

1 *Collier on Bankruptcy* ¶ 3.04[1][b]................................................................................8

Defendant Lehman Brothers Special Financing, Inc. ("LBSF") submits this Opposition to Plaintiffs' Motion to Withdraw Reference of Adversary Proceeding to the Bankruptcy Court (the "Motion") and in support respectfully states as follows:

## I.    PRELIMINARY STATEMENT

This Motion is a transparent effort to forum shop and should be denied. Plaintiffs chose to file their adversary proceeding in the Bankruptcy Court and expressly alleged that it was a "core proceeding" under the Bankruptcy Code. The acknowledgment that this action is a "core" proceeding was unremarkable because Plaintiffs seek a declaration that certain collateral is "property of the [proposed class] and not property of the bankruptcy estate," (Compl. ¶ 97,)[1] and thus the claims raise fundamental issues for the Bankruptcy Court.

It is telling that this motion was filed after the Bankruptcy Court made two related rulings at a July 15, 2009 hearing which were adverse to the Plaintiffs here and which Plaintiffs obviously interpreted as foreshadowing a result on defendants' motion to dismiss the complaint. First, the Bankruptcy Court stayed discovery (over plaintiffs' objection) pending resolution of LBSF's motion to dismiss the complaint in part because the Court recognized that the motion "raised some very strong arguments and, on the basis of those arguments, consider that the taking of what could turn out to be quite burdensome discovery, pending hearings that could resolve the case, would be a waste of resources." (Tr. from July 15, 2009 Hearing, attached hereto as Exhibit 2, at 195:4-12.) Second, Plaintiffs here attempted to intervene in another adversary proceeding in which

---

[1] The Complaint is attached hereto as Exhibit 1.

Plaintiffs claimed that the same collateral at issue in this action was implicated that adversary proceeding.  The Bankruptcy Court denied Plaintiffs' attempt to intervene, holding that the Plaintiffs "have failed to demonstrate a sufficient connection to this dispute to warrant intervention under Rule 24 of the Federal Rules."  (Tr. from July 15, 2009 Hearing, at 192:13-20.)

Contrary to their own allegations in their complaint, Plaintiffs now assert in this motion that this case is not a core proceeding and should not be heard by the Bankruptcy Court.  The timing of the motion – immediately after the Bankruptcy Court's rulings – raises the legitimate question whether Plaintiffs' change of heart is a desire to reshuffle the deck.  In any event, the Motion lacks any merit and should be denied for several independent reasons.

First, the claims against LBSF are typical core proceedings – as Plaintiffs recognized in their complaint.  The determination of whether something is property of a bankruptcy estate is a core bankruptcy function and that is exactly what Plaintiffs are seeking here.  The fact that Plaintiffs have joined other non-bankruptcy claims against non-debtors does not change the fact that the claims against LBSF are core and should be resolved by the Bankruptcy Court.

Second, by filing their lawsuit in the Bankruptcy Court, Plaintiffs consented to that court's jurisdiction and waived the ability to seek a withdrawal of the reference.

Third, the strong interest of promoting efficient litigation practices and discouraging forum shopping support the denial of Plaintiffs' motion.  Plaintiffs actively participated in this adversary proceeding and in other aspects of the bankruptcy case.

They only sought to transfer this case after the Bankruptcy Court granted a stay of discovery and denied their motion to intervene in a separate adversary proceeding. Moreover, certain of the issues presented in this case are raised in other adversary proceedings presently before the Bankruptcy Court. Thus in the interest of judicial efficiency and to avoid blatant forum shopping, the Court should deny the motion.

Finally, this case is far from being trial-ready. Courts in this district routinely deny motions to withdraw the reference as premature until actions are closer to trial. No discovery has occurred, and LBSF has a pending motion to dismiss. The mere possibility that this case could go to trial at some point in the future is not a justification for withdrawing the reference now.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    The Complaint Recognizes that this is a Core Proceeding.

Plaintiffs voluntarily brought the case in the Bankruptcy Court. On March 12, 2009, Plaintiffs filed an adversary proceeding, *Wong et al. v. HSBC USA, Inc., et al*, Adversary Proceeding No. 09-01120 (JMP) in the bankruptcy proceeding *In re Lehman Brothers Holdings Inc., et al,* Chapter 11 Case No. 08-13555 (JMP), which they affirmatively and expressly allege to be a core proceeding.

LBSF, a bankrupt debtor and subsidiary of Lehman Brothers Holdings, Inc., was named a defendant in the case. The Adversary Proceeding arises from certain swap contracts entered into between LBSF and certain counterparties. Some of these counterparties also allegedly owed money to Plaintiffs. Although Plaintiffs state that this case was "automatically referred" to the Bankruptcy Court, the case was <u>not</u> originally filed in the district court and <u>not</u> referred to the Bankruptcy Court.

3

The first three counts seek relief against LBSF.  Count I of the Complaint seeks a declaratory judgment that certain collateral securing obligations to LBSF under various swap contracts "is property of the [proposed class] and not property of the bankruptcy estate."  (Compl. ¶97.)  Count II seeks an injunction against LBSF to prevent it from asserting any claim over the collateral.  (*Id.* ¶110.)  Count III seeks to impose a constructive trust over the collateral.  (*Id.* ¶ 121.)

Plaintiffs stated that "[t]he declaratory and injunctive relief sought herein is a core proceeding within the meaning of 28 U.S.C. § 157(b)."  (Compl. ¶15.)  Plaintiffs repeated this statement in the docket sheet for the adversary proceeding.  Only now, after they have been disappointed by certain rulings of the Bankruptcy Court, do they purport to change their minds and assert this is not a core proceeding.

**B.**     **Plaintiffs Participated Actively in the Bankruptcy Proceedings.**

Plaintiffs argue that they "lack . . . . any other connection to the Lehman Bankruptcy Proceedings."   (Pls.' Memo. of Law in Support of Mot. to Withdraw Reference ("Pls.' Memo.") at 17.)   But this simply is not true.   Since filing their adversary proceeding, Plaintiffs participated actively in the bankruptcy proceedings.  For instance, on May 13, 2009, Plaintiffs filed an objection (months after the objection deadline) and a motion to reconsider an order setting certain procedures regarding, among other things, the assumption and assignment of derivatives contracts (the "Derivatives Procedures Order").   (*See* Mot. for Reconsideration of Derivatives Procedures Order (Docket Entry 3565 in *In re Lehman Brothers Holdings Inc.*); Obj. to Derivatives Procedures Order (Docket Entry 3566 in *In re Lehman Brothers Holdings Inc.*).)   In the Objection, putative class counsel argue that the Derivatives Procedures

Order could adversely affect their putative clients' interests, which they seek to protect in the adversary proceeding they filed.  Specifically, Plaintiffs stated that "the Debtors may seek to adjudicate matters through the Derivative Procedures Orders which are properly the subject of the Adversary Complaint."  (*See* Obj. to Derivative Procedures Order (Dock Entry 3566) at ¶ 16.)

Plaintiffs also filed a motion to intervene in another adversary proceeding pending in the Lehman Brothers bankruptcy, arguing that "LBSF's pursuit of relief in [that] Adversary Proceeding could, as a practical matter, severely impair [Plaintiffs'] interests in the assets and transactions at stake [in the *Wong* matter]."  (*In re Lehman Brothers Holdings, Inc.*, Adv. No. 09-01242-JMP, Docket Entry 7 at 1.)  On July 15, 2009, Judge Peck denied Plaintiffs' motion to intervene, stating that "the Wong plaintiffs, in their capacity as holders of mini-bonds with an indirect interest in the legal determination to be made as between LBSF and BNY as trustee, have failed to demonstrate a sufficient connection to this dispute to warrant intervention under Rule 24 of the Federal Rules."  (Tr. from July 15, 2009 Hearing, at 192:13-20.)

Thus, in addition to active participation in their own adversary proceeding, Plaintiffs participated actively in the bankruptcy proceedings and repeatedly argued that this case is closely connected to other issues and disputes in those proceedings.

C.    **Plaintiffs Seek to Change the Forum After LBSF Filed a Motion to Dismiss, and the Bankruptcy Court Made Rulings Adverse to Plaintiffs.**

On May 27, 2009, LBSF filed a motion to dismiss the claims brought against it based on, *inter alia*, Plaintiffs' lack of standing to assert rights that belonged to others and the fact that the clear terms of the contracts relied upon by Plaintiffs defeat

their assertion that the collateral was their property and not property of the estate.  (*See* Mot. to Dismiss, attached hereto as Exhibit 3.)

Shortly before LBSF filed its motion to dismiss, Plaintiffs served discovery on LBSF.  LBSF thereafter requested that Plaintiffs stay all discovery pending disposition of LBSF's motion to dismiss.   Nonetheless, Plaintiffs continued to seek discovery, and on June 8, 2009, at Plaintiffs' request, the Bankruptcy Court held an informal discovery conference, at which time LBSF notified the Bankruptcy Court of its intent to file a motion to stay discovery.[2]  In seeking this discovery conference, Plaintiffs never suggested that the Bankruptcy Court was an inappropriate forum to resolve these issues.

On June 15, 2009 LBSF filed a motion to stay discovery based on the fact that LBSF's motion to dismiss raised a threshold defect in the action: that Plaintiffs lacked standing to bring the claims against LBSF.  LBSF thus argued that the threshold standing issues should be resolved before burdensome discovery commenced.  Plaintiffs responded to this motion by arguing *inter alia*, that LBSF's motion to dismiss was without merit and should be denied.  At a hearing on the motion to stay on July 15, 2009, the Bankruptcy Court granted LBSF's motion.  Judge Peck stated that "I've actually spent some time thinking about the Wong case." (Tr. at 194:24-25 (Ex. 2).)  Judge Peck continued: "I believe that a stay of discovery is appropriate in this case based upon my review of the dispositive motions that have been filed, but I do not mean to suggest that I have come to any conclusion, whatsoever, as to whether the dispositive motion should be

---

[2]     Plaintiffs also filed a report purportedly pursuant to Federal Rule 26(f) regarding the status of discovery in the Adversary Proceeding.

granted. I think that they raised some very strong arguments and, on the basis of those arguments, consider that the taking of what could turn out to be quite burdensome discovery, pending hearings that could resolve the case, would be a waste of resources." (Tr. at 195:4-12 (Ex. 3).)

Moreover, as set forth above, at this same hearing, the Bankruptcy Court denied Plaintiffs attempt to intervene in a separate adversary proceeding based on Plaintiffs' lack of standing to assert claims over some of the same collateral at issue in the Wong action. *See supra* at 5.

Plaintiffs now ask this Court to withdraw the reference and remove this case from the Bankruptcy Court.

## III.    ARGUMENT AND AUTHORITIES

### A.    Standard for Withdrawal of the Reference.

Pursuant to section 157(d) of title 28 of the United States Code, "[t]he district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d) (emphasis added). There is no statutory definition of what constitutes "cause" to withdraw the reference. *See Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1101 (2d Cir. 1993). Courts in the Second Circuit consider several factors in determining whether "cause" exists, including: (i) whether the action is core or non-core; (ii) judicial economy and efficiency; (iii) uniform bankruptcy administration; (iv) reduction of forum shopping; (v) economical use of the debtors' and creditors' resources; (vi) expediting the bankruptcy process; and (vii) the presence of a jury demand. *See, e.g.*, *In re Orion Pictures Corp.*, 4 F.3d at 1101;

*Kenai Corp. v. Nat'l Union Fire Ins. Co.* (*In re Kenai Corp.*), 136 B.R. 59, 61 (S.D.N.Y. 1992).

A district court's decision to withdraw the reference is discretionary and involves a case-by-case assessment of the factors affecting withdrawal, particularly judicial economy. *See In re Formica Corp.*, 305 B.R. 147 (S.D.N.Y. 2004); *In re Kenai Corp.*, 136 B.R. at 61. No one factor in the withdrawal analysis is dispositive; but if the claims asserted are core claims, this will be significant factor in favor of denying the motion for withdrawal of reference. *See S. Street Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 762 (2d Cir. 1996) (whether claim is core or noncore is most important factor); *Official Committee of Unsecured Creditors v. Lay (In re Enron Corp.)*, 295 B.R. 21, 26 (S.D.N.Y. 2003) (same).

Moreover, 28 U.S.C. § 157(d) "has been interpreted to be of limited scope, with withdrawal being the exception rather than the rule." *In re Argo Comm'ns Corp.*, No. 91 CV 7226 (MJL), 1992 WL 75144, at *2 (S.D.N.Y. Mar. 30, 1992). And, "[e]ven if cause exists … there is no mandate that the reference <u>must</u> be withdrawn. By using the permissive 'may,' Congress has made it clear that withdrawal, pursuant to the first sentence of section 157(d), is discretionary." 1 *Collier on Bankruptcy* ¶ 3.04[1][b].

**B.     <u>The Motion Should Be Denied Because the Matter Is a Core Proceeding.</u>**

The claims against LBSF plainly are core proceedings and should be tried in the Bankruptcy Court. The first and most critical factor courts analyze when deciding whether to withdraw the reference is whether the claims constitute a core or non-core proceeding. *See Orion*, 4 F.3d at 1101; *In re Burger Boys Inc.*, 94 F.3d at 762 (whether

matter is core or non-core is "most important" factor in deciding whether to withdraw bankruptcy reference). As Judge Casey stated in *In re Magnesium Corp. of America*: "Certainly allowing the bankruptcy court the first opportunity to address core matters promotes the uniform administration of the bankruptcy code." No. 01-B-14312 (REG), 2004 WL 1161172, at *2 (S.D.N.Y. May 24, 2004). Once it has been determined that the proceeding is core and thereby inextricably linked to the bankruptcy process, district courts will rarely withdraw the matter from the Bankruptcy Court. *See, e.g., Bambu Sales, Inc. v. Stern*, No. 98 CV 1952 (NG), 1998 WL 760335, at *3 (E.D.N.Y. Sept. 1, 1998) ("[D]istrict courts should only rarely withdraw a core matter from the Bankruptcy Court.").

"A proceeding is encompassed within the Bankruptcy Court's core . . . jurisdiction 'if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" *See In re Leco Enters., Inc.*, 144 B.R. 244, 249 (S.D.N.Y. 1992) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96-97 (5th Cir. 1987)). Because the jurisdictional reach of a Bankruptcy Court is essential to the efficient administration of bankruptcy proceedings, "core" jurisdiction is "construed as broadly as possible subject to the constitutional limits" established by the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2d Cir. 1995).

As explained below, the Adversary Proceeding is a core proceeding under §157(b)(2) and, therefore, the reference to the Bankruptcy Court should not be

withdrawn.  Moreover, at the outset, the Bankruptcy Court should make the core/non-core determination.

      1.      The Bankruptcy Court Should Make the Determination Regarding <u>Whether this is a Core Proceeding</u>.

As a threshold issue, the Bankruptcy Court – not the District Court – is the appropriate court to determine whether the proceeding is core or non-core.  *See* 28 U.S.C. § 157(b)(3) (providing that the "the bankruptcy judge *shall* determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection . . .") (emphasis added).  The Bankruptcy Court is in a better position to decide whether an issue is core given its special expertise in these matters and its familiarity with the specific case at issue.  *See In re Enron Corp.*, No. 03 Civ. 9312 (LTS), 2007 WL 102085, at *3 (S.D.N.Y. Jan. 12, 2004) (Swain, J.) ("It would not serve the interests of efficient administration of the bankruptcy system for this court to pre-empt prematurely or unnecessarily in a single adversary proceeding the bankruptcy court's ability, pursuant to 28 U.S.C. section 157(b)(3), to address these issues in the broader context of Enron's bankruptcy case.").  Thus, courts in this Circuit frequently have denied motions to withdraw the reference where the Bankruptcy Court has not yet determined whether the proceeding is core or non-core.  *See Ranch 1 Metro, Inc. v. State Nat'l Ins. Co. (In re Ranch 1 Inc.)*, Nos. 02 Civ. 4417, 01 B 41853, 02-02058, 2002 WL 31175184, at *3 (S.D.N.Y. Sept. 27, 2002) ("Here, the Defendant has indicated the Bankruptcy Court has made no determination with respect to whether the instant proceeding is core or non-core and that the Defendant itself has not filed a motion with

that court seeking such a determination.  Since no such determination has yet been made by the Bankruptcy Court, we find that the motion at bar is premature").[3]

For example, in denying a motion to withdraw the reference filed by United Illuminating in the Enron bankruptcy, Judge Cote stated:

> UIL's motion is premature. Judge Gonzalez has not yet made a determination whether this action is core or non-core, and there is no need for this court to preempt such a determination by Judge Gonzalez. . . . UIL has provided no good reason to depart from the practice of allowing the bankruptcy judge in the first instance to determine if a proceeding is core or non-core.

*In re Enron Corp.*, No. 03 CIV 5078 (DLC), 2003 WL 22171695, at *2 (S.D.N.Y. Sept. 22, 2003) (citation omitted).

The decision to allow Judge Peck to make the core/non-core determination in the first instance will enable the Bankruptcy Court to treat similarly situated claims in a consistent manner, will prevent the risk of inconsistent decisions, and will promote the efficient use of both judicial and estate resources by having the court most familiar with this case decide this critical issue.  Thus, this Court should deny the motion at least until Judge Peck has determined whether the claims against LBSF are core or non-core.

---

[3]     *See also C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 177 B.R. 760, 766 (N.D.N.Y. 1995) ("[T]his Court will defer to the Bankruptcy judge to determine the issue of whether adversary proceedings nos. 94-91113 and 94-91114 are core or non-core proceedings.  Following such a determination, this Court will then continue its present analysis of whether discretionary withdrawal is warranted in the instant case"); *Hassett v. Indiana Bell Tel. Co. (In re CIS Corp.)*, Nos. 89 B 10073, 10074, 10075, 10076, 10077, 10078, 10079, 92 Civ. 2740, 91-6366A, 1992 WL 176482, at *2 (S.D.N.Y. July 17, 1992) ("[W]hether CIS's action against Indiana Bell is a core proceeding as defined in 28 U.S.C. § 157(b)(2) is a determination to be made by the Bankruptcy Court.  Because the instant motion [to withdraw the reference] depends on the determination of whether this is a core or non-core proceeding, it is brought prematurely in this court . . . .  To permit the withdrawal at this stage on the ground that the proceeding is non-core would flout § 157(b)(3) by removing from the bankruptcy court the decision as to whether an action is core.") (citation omitted).

2.    As Plaintiffs Recognize in the Complaint, the Adversary
      Proceeding Is a Core Proceeding.

In any event, this proceeding *is* core, as Plaintiffs conceded in their complaint. In Section 157(b)(2) of Title 28, Congress set out a broad, non-exclusive list of proceedings that are core. This list includes as core, "matters concerning the administration of the estate," the "allowance or disallowance of claims against the estate," "orders to turn over property of the estate," and "other proceedings affecting the liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2)(A), (B), (E) and (O). The Second Circuit has adopted a view of the scope of core bankruptcy jurisdiction and has repeatedly quoted with approval Justice Breyer's analysis, when he was a member of the First Circuit, of the legislative history of Section 157:

> [T]he legislative history . . . indicates that Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits. The sponsors repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings. They used arguments strongly suggesting that they were pressing the notion to its constitutional bounds. They referred to the suits in the non-core category as 'Marathon-type' cases, which they understood to be proceedings of a very limited kind.

*In re Arnold Print Works, Inc.*, 815 F.2d 165, 168 (1st Cir. 1987) (Breyer, J.); *see In re United States Lines, Inc.*, 197 F.3d 631, 636-37 (2d Cir. 1999); *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1398-99 (2d Cir. 1990) (citations omitted), *vacated*, 498 U.S. 964 (1990), *opinion reinstated*, 964 F.2d 36 (2d Cir. 1991).

Under the Second Circuit's broad interpretation of "core proceedings," this proceeding is core because it seeks a declaration that certain property is not property of the bankruptcy estate, and such a claim could arise only in the context of a bankruptcy

12

case.  *See In re 610 W. 142 Owners Corp.*, 219 B.R. 363, 371 (Bankr. S.D.N.Y. 1998)

("[D]isputes involving a declaration of a debtor's rights with respect to property of the

estate are core proceedings."); *In re Neuman*, 71 B.R. 567, 573 ( S.D.N.Y. 1987) ("[T]he

Bankruptcy Court, rather than another court, should be the forum to decide whether an

asset is property of the estate."); *In re Steffan*, 97 B.R. 741, 744-45 (Bankr. N.D.N.Y.

1989) ("[T]he Court notes its jurisdiction to entertain this adversary proceeding and the

instant motion, which seek a determination as to the amount and nature of the parties'

rights, title and interests in the Trusts-*including whether there is property of the estate*

*involved-. . .*, as a core proceeding because of its exclusive  jurisdiction over property of

the debtor and property of the estate by virtue of 28 U.S.C.A. § 1334(d)." (emphasis in

original)).  Indeed, for this reason, Plaintiffs stated in their complaint that their claims

against LBSF were core proceedings.  (*See* Compl. ¶ 15.)

Plaintiffs now posit that because the majority of their claims are against

non-debtors and are non-core, that somehow "Plaintiffs' three claims for declaratory

judgment, injunctive relief, and a resulting or constructive trust [all against LBSF] are

properly characterized as non-core."  (Pls.' Memo. at 11.)  Plaintiffs provide no support

for this leap of logic.  Plaintiffs' attempt to join claims inextricably related to the

administration of the bankruptcy estate with other claims against non-debtors does not

transform their core proceedings against LBSF into non-core matters.  Moreover, in their

response to LBSF's motion to dismiss – filed after Plaintiffs filed the instant Motion –

Plaintiffs rejected the contention that this case "primarily [sought] remedies against

nondebtors" as "absurd" and argued that "Plaintiffs are indeed quite interested in

preventing their $1.6 billion in Collateral from being wrongfully distributed to LBSF's

creditors." (*See* Resp. to Mot. to Dismiss, attached hereto as Exhibit 4, at 28.) Plaintiffs also argue that their lawsuit constitutes a "claim" against the debtor under the Bankruptcy Code. (*See id.* at 29 n.37.) Thus, Plaintiffs' contention that this case is non-core is belied by their own arguments.

Of course, to the extent that Plaintiffs dismiss their claims with prejudice against LBSF and seek to litigate solely against the non-debtors, then this case may become a non-core proceeding. But, until Plaintiffs do so, they cannot transform this case into a non-core proceeding and hope to withdraw the reference before Judge Peck rules on LBSF's motion to dismiss.

Plaintiffs also argue that this case is non-core because it supposedly is a breach of contract case. (*See* Pls.' Memo. at 12-13.) Plaintiffs fail to acknowledge that they have no contract with LBSF; this simply is not a breach of contract action against LBSF. (*See* LBSF's Mot. to Dismiss (Ex. 1) at 6-11 (describing structure of minibonds transaction).) Plaintiffs sought a declaratory judgment that certain property is not property of the estate, and they have asserted equitable claims over this property. (*See* Compl. ¶¶ 108, 113, 121.) As stated above, Plaintiffs concede they have pleaded, a core claim.[4] Moreover, although Plaintiffs state that this dispute only involves non-bankruptcy contract law, Plaintiffs fail to state that, to the extent Plaintiffs even have standing to assert their claims (and they do not), this case likely will involve certain core bankruptcy issues related to the construction of *ipso facto* provisions (*i.e.*, provisions that modify LBSF's rights simply because of a bankruptcy filing) found in the contracts at

---

[4] Based on what Plaintiffs pleaded, LBSF has moved to dismiss entirely the claims asserted against it.

issues.[5]  The Bankruptcy Court certainly is the most appropriate court to resolve such issues.

While this Court is well equipped to interpret contracts and apply relevant law, the Bankruptcy Court is likewise well versed in issues of contract construction and interpretation – particularly in this complicated chapter 11 proceeding involving a number of pending adversary proceedings relating to contract construction issues that overlap with those potentially at issue here.  Thus, Plaintiffs' argument that the Bankruptcy Court is not the appropriate forum for this action should be rejected.

Thus, to the extent the Court reaches this issue, the Court should hold that Plaintiffs' claims against LBSF are core, and should therefore be heard in the Bankruptcy Court.

**C.     Plaintiffs Waived the Right to Change the Forum by Initiating This Lawsuit in the Bankruptcy Court.**

Whether or not this matter is a core proceeding (and the claims against LBSF are core proceedings), Plaintiffs waived the right to challenge jurisdiction by filing their complaint in the Bankruptcy Court and actively participating in litigation there.  28 U.S.C. 157(c)(2) provides that even if a proceeding is non-core, a bankruptcy court may enter a final judgment with the consent of the parties.  The initiation of an adversary proceeding constitutes consent to the jurisdiction of the bankruptcy court under 157(c)(2).  *See In re Lombard-Wall Inc.*, 48 B.R. 986, 992 ( S.D.N.Y. 1985) ("[A]lthough we

---

[5]     As a threshold matter, LBSF argued in its motion to dismiss that Plaintiffs lack standing and that their claims are rebutted by the clear terms of the documents they rely upon.  To the extent that Plaintiffs claims overcome a motion to dismiss, one of the next phases of this litigation in the Bankruptcy Court will involve the consideration of the enforceability of certain payment priority provisions in contracts to which Plaintiffs are not parties, but in which they have asserted an interest.

hesitate to sanction any procedure that might overstep the bankruptcy court's jurisdiction, we see no evidence in section 157(c)(2) to suggest altering the traditional rule that consent can be both express and implied."); *Abramowitz v. Palmer*, 999 F.2d 1274, 1279 (8th Cir. 1993) ("[I]mplied consent is sufficient to grant the bankruptcy court authority to enter a final judgment."); *Horwitz v. Alloy Auto. Co.*, 992 F.2d 100, 103 (7th Cir. 1993) ("[S]ilence does not imply consent, but affirmatively invoking the bankruptcy court's jurisdiction most assuredly supplies whatever consent is necessary"); *In re STN Enters., Inc.*, 73 B.R. 470, 484 (Bankr. D. Vt. 1987) ("By filing a personal adversary proceeding, [defendant] has … given his implicit consent to this Court's adjudication over the Committee's second cause of action as a non-core-related matter which further enables this Court, because of the reference, to enter a final order under 11 U.S.C. § 157(c)(2).").

Plaintiffs initiated this action in the bankruptcy court, stating affirmatively that it was a core proceeding. (*See* Compl. ¶ 15.) When plaintiffs appeared at the initial pre-trial conference before Judge Peck on July 15 they raised no objection to the reference to Bankruptcy Court and made no suggestion that their affirmative selection of that forum was inappropriate. It was only after all Defendants had briefed their motions to dismiss, and Judge Peck denied important motions (i.e., granting a motion to stay discovery and rejection of Plaintiffs' assertion of standing to intervene in another case involving similar contract construction issues) that plaintiffs asserted for the first time that their claims lie outside the Bankruptcy Court jurisdiction. Under well-settled law,

Plaintiffs waived the right to challenge the forum at this stage, after previously consenting to the Bankruptcy Court's jurisdiction.[6]

### D.    __The Motion Is a Blatant Attempt at Forum Shopping__.

The Motion also should be denied because a fair and compelling inference from the facts is that the timing of the motion is driven by forum shopping. Withdrawal of the reference should be denied where the withdrawal motion is driven by a party's attempt at forum shopping. *See In re Kenai Corp.*, 136 B.R. at 61 ("[T]he court must employ [withdrawal] judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of Bankruptcy Court."); *Hassett v. Citicorp N. Am., Inc. (In re CIS Corp.)*, 188 B.R. 873, 877 (S.D.N.Y. 1995) ("[D]istrict courts in this [C]ircuit have consistently held that § 157(d) should be construed narrowly, so that it does not provide an 'escape hatch' out of Bankruptcy Court").

A similar situation was presented in *Drew v. Worldcom, Inc.*, where the court rejected a motion to withdraw the reference that was filed after a motion for summary judgment had been filed:

> [T]he timing of Drew's motion to withdraw the reference gives rise to a strong inference that he is attempting to forum shop. The motion was filed in the Bankruptcy Court, and then in this Court, only three weeks after MCI moved in the Bankruptcy Court for summary judgment and for an order denying class certification.
>
> Drew's assertions on this motion also directly conflict with his representations in 2004, in his response to MCI's

---

[6]    In addition to filing this adversary proceeding and stating that it was a core proceeding, Plaintiffs also served discovery, submitted a statement pursuant to Federal Rule of Civil Procedure 26(F), requested and participated in a discovery conference with Defendants and Judge Peck, and objected to the Derivatives Procedures Order.

> objection to his claim, that the Bankruptcy Court had jurisdiction over the objection and that the claim objection was a "core proceeding" under 28 U.S.C. § 157(b).  This contradiction provides further support for the inference that the motion to withdraw reference is motivated by a desire to obtain what Drew hopes will be a more favorable forum for litigation of the substantive motions currently pending in the Bankruptcy Court

No. 06 Civ. 3407 (JGK), 2006 WL 2129309, at *3 (S.D.N.Y. July 26, 2006)

Here, the Bankruptcy Court already has granted LBSF's motion to stay discovery in this case based on the pending motion to dismiss and also denied Plaintiffs' attempts to intervene in another adversary proceeding on the basis of standing.  (*See* Orders denying intervention and granting motion to stay discovery, attached hereto as Exhibits 5-6.)  Having lost twice before Judge Peck on motions that relate to the motions to dismiss filed by LBSF, Plaintiffs are now in search of an alternative forum.  This Court should reject Plaintiffs' apparently blatant efforts at forum shopping.

Likewise, the interests of efficiency dictate that this case should remain in the Bankruptcy Court.  Plaintiffs cite to *In re Solutia* and *In re Adelphia Communications Corp. Securities & Derivative Litigation*, in support of their argument that efficiency dictates that the cases be tried elsewhere.  Both cases are inapposite.  In *Solutia Inc v. EMC Corp. (In re Solutia)*, it was "undisputed that th[e] action involved a non-core dispute."  *In re Solutia*, No. 04 CIV. 2842 (WHP), 2004 WL 1661115, at *2 (S.D.N.Y. July 27, 2004).  The court found that the non-core nature of the action weighed in favor of withdrawal of the reference where, *inter alia*, the "bankruptcy court[] lack[ed] experience with this litigation [and because of] the interference with Solutia's reorganization before the bankruptcy court."  *Id.*  In contrast, the Bankruptcy Court in

this case already has demonstrated its experience with this litigation and is dealing with numerous comparable contract construction issues in other adversary proceedings and contested matters.   Moreover, the lawsuit seeks to deprive the estate of hundreds of millions, if not billions of dollars, in property.  (*See* Compl. ¶ 8 (alleging that Plaintiffs seek $1.512 billion).)   Thus, this case fundamentally affects the administration of the estate and should be resolved, in the first instance, in the Bankruptcy Court.

>        *In re Adelphia* also is completely inapposite.   In that case, certain of Plaintiffs' claims warranted *mandatory* withdrawal under 157(d) because they involved "substantial and material consideration of non-Bankruptcy Code federal statutes."  *In re Adelphia*, No. 03 MDL 1529 (LMM), 05 CIV 9285, 05 CIV 9050, 05 CIV 9250, 2006 WL 337667, at *3 (S.D.N.Y. Feb. 10, 2006).  The court found that the remaining claims were non-core and involved "overlapping of facts, transactions, and issues" with a multi-district litigation pending in the Southern District of New York.  *Id.*  Thus, the court found that the efficiencies of withdrawal and consolidation with the MDL favored withdrawal.  There are no such efficiencies associated with withdrawal in this case.  To the contrary, the Bankruptcy Court already has demonstrated familiarity with this case and it would be inefficient to have it resolved elsewhere.

>        **E.**        <u>**The Motion Is Premature Until the Case is Trial Ready**</u>**.**

>        Finally, the Court should deny the Motion as premature.   Courts in this jurisdiction are "generally unreceptive to motions to withdraw reference where the underlying action is in its preliminary stages and is closely related to proceedings already pending in bankruptcy court."  *In re Enron Corp.*, No. 04 Civ. 7693(RJH), 2004 WL 2912893, at *2 (S.D.N.Y. Dec. 14, 2004).  Courts have held that when a case is not yet

"trial ready" and significant pre-trial matters remain to be resolved which can be more efficiently handled by the bankruptcy court, with its expertise in both bankruptcy law and the facts of the particular matter, denial of a motion for withdrawal is appropriate. *See In re Magnesium Corp. of Am.*, 2004 WL 1161172, at *2 ("While the issue is always case specific, often courts in this District have found it appropriate to defer withdrawing the reference until the case is trial ready."); *In re Enron*, 2004 WL 2912893, at *2; *In re Enron*, 2003 WL 22171695, at *2 (denying motion to withdraw the reference as premature where the Bankruptcy Court had not made a determination as to whether the action was core or non-core, finding no need for district court to preempt such a determination by Judge Gonzalez).[7]  The Adversary Proceeding is far from being "trial ready."   There are motions to dismiss pending, no discovery has occurred, and a scheduling order has not been entered.

---

[7]        *In re Formica*, 305 B.R. at 150 (holding the request for withdrawal due to the pendency of a jury trial request premature until "the case is ready to proceed to trial"); *In re Corson Mfg. Co.*, No. 01-MC-5E, 99-16855K, AP 00-1366K, 2001 WL 877394, at *2 (W.D.N.Y. June 27, 2001) ("[I]t appears better that the Bankruptcy Court continue to preside over the adversary proceeding, given its familiarity with the case and the kinds of issues raised therein."); *In re Ames Dep't Stores, Inc.*, 190 B.R. 157, 163 (S.D.N.Y. 1995) (denying motion to withdraw reference of non-core proceeding as premature (even at the summary judgment stage) because the bankruptcy judge's "familiarity with the circumstances of the Ames bankruptcy and the TJX lease guarantees continues to promote the smooth and efficient resolution of [plaintiff's] claim"); *In re Times Circle E., Inc.*, No. 94 V 455593 (TLB, 95 CIV 2938 (SHS), Adv. No. 95/8248A, 1995 WL 489551, at *3 (S.D.N.Y. Aug. 15, 1995) (stating that it would be premature to withdraw the reference until the case was ready for trial because there will be "significant discovery" in this matter and "the Bankruptcy Court is familiar with the issues facing Times Circle's estate as a result of overseeing its administration, including having conducted an evidentiary hearing"); *In re Ionosphere Clubs, Inc.*, No. 89 B 10448 (BRL), 89 B 10449 (BRL), 89 B 10287 (BRL), 92-1150A, 93 CIV 1260 (CSH), 1994 WL 132236, at *3-4 (S.D.N.Y. April 14, 1994) ("Judicial efficiency and uniformity will be promoted by allowing the Bankruptcy Court, already familiar with the underlying action, to manage the proceedings until the case becomes ready for trial."); *In re Kenai Corp.*, 136 B.R. at 61-62 (denying motion to withdraw reference of non-core proceeding still in its preliminary stages where "the interest of judicial economy and sound judicial administration militate[d] in favor of denying defendants' motion to withdraw").

Moreover, the possibility that the Adversary Proceeding may, at some point in the future, require that some factual issues be resolved by a jury does not necessitate withdrawal of the reference at this time. *See*, *e.g.*, *In re Orion Pictures Corp.*, 4 F.3d at 1101-02 (stating that where a "case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, [the district court] therefore might conclude that the case at that time is best left in the Bankruptcy Court.").[8] As an initial matter, Plaintiffs do not have a right to a jury with respect to the claims they asserted against LBSF. It is basic that equitable causes of action, including claims for an injunction or a constructive trust, do not have a right to a trial by jury. *See In re Paula Saker & Co., Inc.*, 37 B.R. 802, 808 (Bankr. S.D.N.Y. 1984) ("For example, where a cause of action seeking monetary relief is integral to the equitable relief sought, such as the imposition of a constructive trust . . . the action lies in equity with no right of trial by jury."); *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 643-44 (S.D.N.Y. 2005) (claims for injunction and constructive trust are equitable in nature and do not entitle claimant to trial by jury), *aff'd*, 469 F.3d 284 (2d Cir. 2006). Likewise, a declaratory judgment claim as to whether an asset is or is not part of the bankruptcy estate is not accompanied by a right to a jury trial.[9]

---

[8]    *In re Kenai Corp.*, 136 B.R. at 61 ("A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and Bankruptcy Courts."); *In re Ames Dept. Stores, Inc.*, 190 B.R. at 162 (holding that even if a jury trial is demanded, "withdrawal of the reference . . . still depends on the particular circumstances of each case, including whether the case is likely to reach trial.")

[9]    To determine whether a declaratory judgment claim has a right to a jury a court must determine whether the underlying claim is "legal or equitable in nature." *Anesthesia Assocs. of Mount Kisco, LLP v. N. Westchester Hosp. Ctr.*, 59 A.D.3d 481, 482 (N.Y. App. Div. 2009); *see also Prisco v. State of N.Y.*, No. 91 Civ 3990(RLC), 1995 WL 693251, at *6 (S.D.N.Y. Nov. 22, 1995) ("The [Declaratory Judgment] Act

Even if a jury trial is needed at a later day (and it is not, as least for the claim against LBSF), the reference should not be withdrawn at this time because there would be greater efficiency and conservation of judicial resources if this proceeding remained in the Bankruptcy Court until any trial.[10]   Indeed, if the possibility of a trial were sufficient to withdraw the reference, then every adversary proceeding in which a jury trial was demanded would be withdrawn to the district court at the outset.   That is not the practice in this district and not the law.   As the court in *Keene Corp. v. Williams Bailey & Wesner L.L.P.* (*In re Keene Corp.*), explicitly stated:

> While it is clear that the bankruptcy court may not conduct a jury trial in this non-core proceeding, it does not necessarily follow that the reference must be withdrawn at this time.   In fact, a rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme.

---

does not provide an independent basis for a jury trial; it simply does not act to strip the right from parties who can already claim it."). Because an action determining whether an asset is part of the bankruptcy case is a matter for a bankruptcy court, not a jury, a declaratory judgment for the same does not entitle the claimant to a trial by jury. *See In re Neuman*, 71 B.R. at 573 ("[T]he Bankruptcy Court, rather than another court, should be the forum to decide whether an asset is property of the estate.").

[10]     Moreover, in the event this Court is called on to review the Bankruptcy Court's decision at a later date, the Bankruptcy Court's record and analysis will assist this Court in making a determination. *See, e.g., Cohen v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.* (*In re County Seat Stores, Inc.*), No. 01 Civ. 2966 (JGK), 2002 WL 141875, *6 (S.D.N.Y. Jan. 31, 2002) ("It would be an inefficient use of judicial resources to withdraw this proceeding from the Bankruptcy Court at this point and lose the advantage of its views on this dispute."); *Hawaiian Airlines, Inc. v. Mesa Air Group, Iinc.*, 355 B.R. 214, 223-24 (D. Haw. 2006) ("[r]esolution of this action by the Bankruptcy Court is the most efficient use of judicial resources. The Bankruptcy Court is already familiar with many of the circumstances relevant to the instant case."); *In re Formica Corp.*, 305 B.R. at 150-51 (judicial economy is served by having the Bankruptcy Court adjudicate the dispute where "defendants have already moved to dismiss [the] action before the Bankruptcy Court. That motion is fully briefed, and . . . the Bankruptcy Court heard argument . . . ."); *In re Ames Dep't Stores, Inc.*, 190 B.R. at 163-64 (concluding that "[t]he most efficient use of judicial resources is to permit the case to go forward in the Bankruptcy Court . . . [and] for this Court to become familiar with the facts and law of this case would duplicate much of what Judge Goodman has already accomplished.").

182 B.R. 379, 385 (S.D.N.Y. 1995) (denying defendant's request for withdrawal of reference based on grounds of right to a jury trial) (internal and external citations omitted).[11] Thus, as a threshold matter the Court should deny the motion until it is closer to being trial ready.

## IV.    CONCLUSION AND REQUESTED RELIEF

For all the reasons discussed above, the Court should deny the Motion and grant LBSF any further relief to which it is justly entitled.

Dated:  August 28, 2009

                                   Respectfully submitted,


                                   /s/ Richard W. Slack
                                   Ralph I. Miller
                                   Richard W. Slack
                                   WEIL, GOTSHAL & MANGES LLP
                                   767 Fifth Avenue
                                   New York, New York 10153
                                   Telephone: (212) 310-8000
                                   Facsimile: (212) 310-8007

                                   Attorneys for Debtors
                                   and Debtors in Possession

---

[11]    *See also Mishkin v. Ageloff (In re Adler, Coleman Clearing Corp.)*, 270 B.R. 562, 565 (S.D.N.Y. 2001) ("Fiero contends that '"as the jury trial of this matter will undoubtedly proceed, if at all, before this Court, judicial economies dictate that the post-discovery pre-trial phase proceed before this Court too.'" The Court disagrees."); *In re Ames Dep't Stores, Inc.*, 190 B.R. at 162 (holding that even if a jury trial is demanded, "withdrawal of the reference . . . still depends on the particular circumstances of each case, including whether the case is likely to reach trial ….").