Patricia Farren
David G. Januszewski
Joel H. Levitin
Howard G. Sloane
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Defendants HSBC USA Inc., HSBC Bank plc, Pacific International Finance Limited, HSBC Bank (Cayman) Limited, HSBC Holdings plc, Scott Aitken, Cereita Lawrence, Sarah Coombs, Janet Crawshaw, and Sylvia Lewis*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br>　　　　　　　　　　　　　　Debtors. | Case No. 1:09-cv-06841-LTS |
| KA KIN WONG, SIU LUI CHING, CHUN IP, JIN LIU, YIN YING LEUNG, LAI MEI CHAN AND SING HEUNG, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br>　　　　　　　　　　　　　　plaintiffs,<br>- *vs.* -<br>HSBC USA INC., HSBC BANK PLC, PACIFIC INTERNATIONAL FINANCE LIMITED, HSBC BANK (CAYMAN) LIMITED (f/k/a HSBC FINANCIAL SERVICES (CAYMAN) LTD.), HSBC HOLDINGS PLC, SCOTT AITKEN, CEREITA LAWRENCE, SARAH COOMBS, JANET CRAWSHAW, SYLVIA LEWIS, THE BANK OF NEW YORK MELLON CORPORATION AND LEHMAN BROTHERS SPECIAL FINANCING INC.,<br>　　　　　　　　　　　　　　Defendants. | Chapter 11 Case No. 08-13555-JMP<br><br>(Jointly Administered)<br><br>Adversary Proceeding Case No. 09-01120-JMP |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO
WITHDRAW THE REFERENCE OF THE ADVERSARY
PROCEEDING TO THE BANKRUPTCY COURT**

# TABLE OF CONTENTS

                                                                   **Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT

   A.   Plaintiffs' Motion Is Untimely............................................................................ 5

   B.   Plaintiffs Satisfy No Other Criteria For Withdrawal......................................... 10

CONCLUSION..................................................................................................................... 14

# **TABLE OF AUTHORITIES**

|  | Page |
|---|---|
| Cases | |
| *Drew* v. *WorldCom, Inc.*, No. 06 Civ. 3407(JGK), 2006 WL 2129309 (S.D.N.Y. July 26, 2006) .................................................................................... | 5, 7, 10, 13 |
| *Enron Corp.* v. *Citigroup, Inc.* (*In re Enron Corp.*), 353 B.R. 51 (Bankr. S.D.N.Y. 2006) ............................................................................................... | 11 |
| *Enron North America Corp.* v. *Media General Inc.* (*In re Enron Corp.*), No. 04 Civ. 2527(SHS), 2004 WL 1197243 (S.D.N.Y. May 28, 2004) .................................................................................................................. | 10-12 |
| *Hassett* v. *Bancohio National Bank* (*In re CIS Corp.*), 172 B.R. 748 (S.D.N.Y. 1994) ......................................................................................................... | 12 |
| *Hiser* v. *Neumann Medical Center, Inc.* (*In re St. Mary Hospital*), 117 B.R. 125 (Bankr. E.D. Pa. 1990) ........................................................................... | 10 |
| *Lone Star Industries, Inc.* v. *Rankin County Economic Development District* (*In re New York Trap Rock Corp.*), 158 B.R. 574 (S.D.N.Y. 1993) ................................................................................................................. | 5-6, 13 |
| *In re Maywood Capital, Inc.*, 07 Civ. 3128(LTS), 2007 WL 2609970 (S.D.N.Y. Aug. 30, 2007)................................................................................................... | 12 |
| *Official Committee of Unsecured Creditors of FMI Forwarding Co.* v. *Union Transport Corp.* (*In re FMI Forwarding Co.*), No. 00 B. 41815(CB), 2005 WL 147298 (S.D.N.Y. Jan. 24, 2005) ................................ | 5-6 |
| *Official Committee of Unsecured Creditors of Verestar, Inc.* v. *American Tower Corp.*, No. 05 Civ. 6268(RPP), 2006 WL. 763054 (S.D.N.Y. Mar. 23, 2006) ............................................................................... | 11 |
| *Official Committee of Unsecured Creditors of the VWE Group* v. *Amlicke* (*In re VWE Group, Inc.*), 359 B.R. 441 (S.D.N.Y. 2007)............................................. | 13 |
| *Orion Pictures Corp.* v. *Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095 (2d Cir. 1993).......................................................................... | 5, 10, 12 |
| *Tristani* v. *Eastern Air Lines, Inc.* (*In re Ionosphere Clubs, Inc.*), No. 90 Civ. 7332(MBM), 1991 WL 29066 (S.D.N.Y. Feb. 27, 1991) ..................... | 6 |
| *Yashiro Co.* v. *Falchi* (*In re Falchi*), No. 97 B 43080(JLG), 97-9057A, 1998 WL 274679 (Bankr. S.D.N.Y. May 27, 1998) .......................................... | 11 |

|  | Page |
|---|---|
| *In re Zachman Homes, Inc.*, 83 B.R. 633 (Bankr. D. Minn. 1985) .......................... | 10 |
| Rules |  |
| Fed. R. Bankr. P. |  |
| 5011 .................................................................................................................... | 1 |
| 7012(6)................................................................................................................ | 10 |
| Fed. R. Civ. P. |  |
| 11 ........................................................................................................................ | 13 |
| N.Y. Loc. Civ. R. |  |
| 7.1(a).................................................................................................................... | 1 |
| S.D.N.Y. Loc. Bankr. R. |  |
| 5011-1 ................................................................................................................. | 1 |
| 9013-1 ................................................................................................................. | 1 |
| Statutes |  |
| Bankruptcy Code |  |
| 11 U.S.C. § 560 (2006)........................................................................................ | 6 |
| Judicial Code |  |
| 28 U.S.C. § 157(b) (2006) ................................................................................... | 2, 7, 13 |
| 28 U.S.C. § 157(b)(3) (2006)............................................................................... | 11 |
| 28 U.S.C. § 157(c)(1) (2006)............................................................................... | 12 |
| 28 U.S.C. § 157(c)(2) (2006)............................................................................... | 10 |
| 28 U.S.C. § 157(d) (2006) ................................................................................... | 1, 5, 10 |
| 28 U.S.C. § 1334 (2006)...................................................................................... | 1, 7 |

Defendants HSBC USA, Inc. ("HUSI") and HSBC Holdings plc, HSBC Bank plc, HSBC Bank (Cayman) Limited (f/k/a HSBC Financial Services (Cayman) Ltd.), Pacific International Finance Limited, Scott Aitken, Cereita Lawrence, Sarah Coombs, Janet Crawshaw, and Sylvia Lewis (the "Foreign Defendants") respectfully submit this Memorandum in opposition to plaintiffs' Motion to Withdraw Reference of Adversary Proceeding pursuant to 28 U.S.C. § 157(d), Fed. R. Bankr. P. 5011, Local Bankruptcy Rules 5011-1 and 9013-1(a), and Local Civil Rule 7.1(a). For the reasons set forth below, plaintiffs' motion should be denied.[1]

## PRELIMINARY STATEMENT

In support of the instant motion, plaintiffs argue that their claims of priority over certain assets claimed by the bankruptcy estate "are properly deemed non-core proceedings *notwithstanding their labels in the Adversary Complaint*" and therefore the reference should be withdrawn and this Court, rather than the bankruptcy court, should adjudicate this case. (Pl. Br. at 2-3; emphasis added) That Adversary Complaint was drafted and filed in bankruptcy court by plaintiffs themselves, and as the highlighted language suggests, plaintiffs' current position is flatly inconsistent with their representations to the bankruptcy court both before and after they filed the instant motion. In addition to being untimely, this tactical about-face satisfies none of the criteria for withdrawal of reference of this adversary proceeding to the bankruptcy court.

---

[1] Plaintiffs admit in their opposition to HUSI's motion to dismiss that they were mistaken in identifying HUSI as a trustee of the minibond program on which they base their claims. (Dkt. 64 at 2 n.3) And, as the Foreign Defendants demonstrated in their motion to dismiss, plaintiffs have not alleged any facts supporting the exercise of personal jurisdiction over any of them. (*See* Dkt. 39.) By opposing the instant motion these defendants do not intend, and should not be deemed, to waive these substantive and jurisdictional defects.

Plaintiffs purport to represent a class of "tens of thousands of Hong Kong investors" (*id*. ¶ 5) who may suffer losses on "minibonds" that were impacted by the insolvency of Lehman Brothers Special Financial Inc. ("LBSF") and the resulting termination of certain credit default swaps.  When they filed this proceeding in bankruptcy court in March 2009, plaintiffs invoked the court's jurisdiction under 28 U.S.C. § 1334 (Cpt. ¶ 16, Dkt. 1), and represented that they were asserting core claims under 28 U.S.C. § 157(b) and related claims. (*Id.*)  On July 15, 2009, plaintiffs' counsel told Judge Peck that they "thought it was appropriate and right to bring these claims in Your Honor's court because it's so intimately connected to the bankruptcy estate" (*see* Transcript of Omnibus Hearing in *In re Lehman Brothers Holdings, Inc.*, No. 08-13555, cited portions of which are annexed to the accompanying Sloane Declaration as Exhibit 1, at 178), and in their August 10, 2009 Opposition to LBSF's Motion to Dismiss the Complaint, plaintiffs argued that it was "absurd" to suggest "that the connection between this case and the Chapter 11 proceedings is tenuous at best."  (Dkt. 60, at 28)

As shown in the pending motions to dismiss, plaintiffs' assertion of standing to litigate the respective interests of LBSF and swap counterparties reflect a transparent effort to proceed against foreign non-debtors in a U.S. court despite the lack of personal jurisdiction governing foreign choice-of-law and choice-of-forum provisions, and the progress of an effective program in Hong Kong to settle claims of minibond investors directly.[2]  Rather than submitting to the outcome of the motions to dismiss, which are scheduled to be heard on September 24, 2009, plaintiffs have belatedly filed the instant motion, which directly repudiates their own "core claim" allegations in order to forum-shop again, disingenuously arguing that

---

[2] *See* Defendant Lehman Brothers Special Financing, Inc.'s Motion to Dismiss the Complaint dated May 27, 2009 (Dkt. 17); Defendant HSBC USA, Inc.'s Motion to Dismiss the Class Action Complaint, Abstain or Stay the Class Action dated May 27, 2009 (Dkt. 16); and the Foreign Defendants' Motion to Dismiss, Abstain or Stay (Dkt. 39).

they have not actively participated in bankruptcy court proceedings. (Pl. Br. at 7 n.4, 17) Three developments preceded (and no doubt triggered) this new tack:

*First*, on July 15, 2009, based on plaintiffs' lack of standing, the bankruptcy court rejected plaintiffs' attempt to intervene in an adversary proceeding that (according to plaintiffs) relates to the same credit default swaps at issue here. (*See* Sloane Decl., Exh. 1) During the oral argument in *Lehman Brothers Special Financing Inc.* v. *BNY Corporate Trustee Services Limited*, No. 09-01242 ("*BNY*"), Judge Peck stated to class counsel:

> You've made it clear that you represent a class of retail investors in a mini-bond structure that perhaps has a billion-five of moms-and-pops in Hong Kong and elsewhere offshore that bought into some investments they probably never should have bought into, but it's not my job to determine the suitability of investments. At this point, my job is to figure out whether or not your group is so situated that they actually have a meaningful interest to protect in this particular litigation, and I'm having a hard time seeing that.

(Sloane Decl. Exh. 1 at 187) Judge Peck pointed out that the same analysis "goes to some of the standing issues that are going to be considered, not today, in the motion to dismiss the HSBC matter as it relates to LBSF on a standing basis. So I'm familiar generally with these issues . . . ." (*Id.* at 190) Finally, the court ruled as follows:

> I'm satisfied, based upon what I've heard, recognizing that none of this is evidence but simply legal argument, that the *Wong* plaintiffs, in their capacity as holders of mini-bonds with an indirect interest in the legal determination to be made between LBSF and BNY as trustee, have failed to demonstrate a sufficient connection to this dispute to warrant intervention under Rule 24 of the Federal Rules.

(*Id.* at 192)

*Second*, in the course of the same hearing, the bankruptcy court granted LBSF's motion to stay discovery initiated by plaintiffs in this adversary proceeding, saying that it was doing so in recognition that the arguments in favor of dismissal were "strong." (*Id.* at 195, 197)

*Third*, on July 22, 2009, the Hong Kong Securities and Futures Commission announced that under its auspices, the banks that had sold minibonds directly to investors in Hong Kong (*i.e.*, the "tens of thousands of Hong Kong investors" whom plaintiffs purport to represent in *this* proceeding) had agreed to pay eligible investors most of the face value of their investments, irrespective of the market deterioration associated with LBSF's insolvency.[3] (Sloane Decl., Exh. 2)  This development reinforces defendants' showing that the bankruptcy court should dismiss on *forum non conveniens* grounds, abstain, or stay this adversary proceeding until it can be determined whether and to what extent plaintiffs' purported claims survive settlement efforts in Hong Kong and judicial proceedings (among parties that indisputably have standing) in the bankruptcy court and elsewhere regarding the consequences of LBSF's default.

Two weeks after the bankruptcy court rejected plaintiffs' attempt to intervene in the *BNY* matter and imposed a discovery stay in this proceeding, and only nine days after the Hong Kong securities regulator announced a program to resolve the concerns of minibond investors without litigation, plaintiffs filed the instant motion, asserting for the first time — and directly contrary to their representations to the bankruptcy court — that their claims are neither core nor related to the bankruptcy action.  Although jurisdictional admissions of a party do not bind a court, in the context of this belated appeal to the district court's discretion, plaintiffs' strategic reversal raises serious issues of waiver and untimeliness, along with the risk of undue burden, prejudice, and inconsistent outcomes on issues that the bankruptcy court has already begun to consider, both in this proceeding and in allegedly similar adversary proceedings in which summary judgment motions are scheduled to be heard by Judge Peck on November 19, 2009.

---

[3] These settlements are proceeding among non-debtors in Hong Kong and do not require action by this Court or the bankruptcy court.

Now that plaintiffs have repudiated their allegations of bankruptcy court jurisdiction and ratified other grounds for dismissal that the bankruptcy court is scheduled to hear on September 24, 2009, the appropriate next step is dismissal by the bankruptcy court, not a do-over in the district court on the basis of an admittedly defective complaint.

## ARGUMENT

Under the express language of 28 U.S.C. § 157(d), a motion for withdrawal of reference must be timely, and the movant must make a showing of cause. The Court of Appeals for this Circuit has identified the following factors to be considered in this context: (1) whether the proceeding is core or non-core; (2) judicial economy; (3) uniformity in bankruptcy administration; (4) economical use of debtors' and creditors' resources; (5) reduction of forum shopping and confusion; (6) expediting the bankruptcy process; and (7) the presence of a jury demand. *Orion Pictures Corp.* v. *Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1101 (2d Cir. 1993). As shown below, plaintiffs have not satisfied a single one of these criteria.

A.     **Plaintiffs' Motion Is Untimely**

Because 28 U.S.C. § 157(d) does not impose a specific time limit, "the Court must assess timeliness in the context of the parties' interactions throughout the course of the litigation in the Bankruptcy Court." *Drew* v. *WorldCom, Inc.*, No. 06 Civ. 3407(JGK), 2006 WL 2129309, at *2 (S.D.N.Y. July 26, 2006). "[C]ourts in this Circuit have defined 'timely' to mean 'as soon as possible after the moving party has notice of the grounds for withdrawing the reference.'" *Official Committee of Unsecured Creditors of FMI Forwarding Co.* v. *Union Transportation Corp.*, No. 00 B. 41815(CB), 2005 WL 147298, at *6 (S.D.N.Y. Jan. 24, 2005) (citations omitted). It is also clear that "[d]elay for tactical reasons, prejudicial to the adversary or to the administration of justice, can be grounds for denying" a withdrawal motion. *Lone Star Industries, Inc.* v. *Rankin County Economic Development District* (*In re New*

*York Trap Rock Corp.*), 158 B.R. 574, 577 (S.D.N.Y. 1993); *see also In re FMI Forwarding Co.*, 2005 WL 147298, at *6-7.

Plaintiffs' motion fails under every one of these tests. Plaintiffs necessarily had notice of their asserted grounds for withdrawal at the very outset of the case because this motion is not based on new facts, but rather on their mere recharacterization of the same claims they filed in bankruptcy court in March 2009. Although they now represent that they have asserted "solely non-bankruptcy claims involving issues of contract interpretation" (Pl. Br. at 3), their Complaint asserts that "[t]he statutory predicates for the relief requested herein are §§105(a), 362, 541 and 560 of Title 11 of the United States Code, as amended (the 'Bankruptcy Code')" (Cpt. ¶ 17), and as recently as July 15, 2009, they told Judge Peck that they "thought it was appropriate and right to bring these claims in Your Honor's court because it's so intimately connected to the bankruptcy estate." (Sloane Decl., Exh. 1 at 178) For these reasons, plaintiffs' excuse that they had no choice but to file their claims in bankruptcy court (Pl. Br. at 2, 7 n.4) rings hollow, to say the least. If plaintiffs genuinely believed that (contrary to their own allegations), they could and should have opposed the automatic referral at the time they filed their Complaint. *See Tristani* v. *Eastern Air Lines, Inc.* (*In re Ionosphere Clubs, Inc.*), No. 90 Civ. 7932(MBM), 1991 WL 29066, at *1 (S.D.N.Y. Feb. 27, 1991).

At the very latest, plaintiffs had notice of defects in their invocation of bankruptcy law on May 27, 2009, when defendants LBSF and HUSI filed their respective motions to dismiss. Yet over the ensuing months, rather than seeking withdrawal of the reference, plaintiffs actively participated in and tried to expand their role in bankruptcy court proceedings. Among other activities, they served the same Complaint (with the same allegations of core and related claims) on the Foreign Defendants; they stipulated to the intervention of the Lehman Unsecured Creditors' Committee in their self-described "core claims;" they defended their selection of bankruptcy court and characterized criticisms of their core claim assertions

as "absurd;" they imposed on all defendants the cost and burden of briefing jurisdictional defects that plaintiffs now admit; they served document demands on LBSF; they actively resisted a discovery stay and sought other relief from the bankruptcy court; and they stipulated to a briefing schedule and near-term hearing on defendants' motions to dismiss — again without even a hint that they would repudiate their appeal to bankruptcy court jurisdiction.

Indeed, it was not until after the bankruptcy court had recognized plaintiffs' lack of standing in what plaintiffs consider a virtually-identical proceeding, and indicated that the arguments for dismissal of this proceeding were "strong," that plaintiffs contradicted the representations in their pleading. (Class counsel may also have been reacting to the announcement of Hong Kong's program for the amicable settlement of minibond claims just as Judge Peck is about to address standing, *forum non conveniens*, and abstention/stay motions in this matter.)

The untimeliness of this motion is also evident from the scope of "the parties' interactions throughout the course of the litigation in the Bankruptcy Court." *Drew* v. *WorldCom, Inc.*, 2006 WL 2129309, at *2. Contrary to plaintiffs' assurances that they have not actively participated in bankruptcy court to date (Pl. Br. at 7 n.4, 17), the following chronology highlights the stark contrast between this matter and cases in which the bankruptcy court has not yet engaged in substantive proceedings at the behest of the party seeking discretionary withdrawal:

- Plaintiffs initiated this adversary proceeding in bankruptcy court in March 2009, invoking the court's jurisdiction under 28 U.S.C. § 1334 (Cpt. ¶ 15, Dkt. 1), and asserting that they were alleging core claims under 28 U.S.C. § 157(b) (regarding ownership of what they call "minibond collateral" claimed by LBSF to be part of the bankruptcy estate) and related claims (arising from the alleged mismanagement of the "minibond" program upon LBSF's insolvency and default). (*Id.*)  Plaintiffs asserted that "[t]he statutory predicates for the relief requested herein are §§ 105(a), 362, 541 and 560 of Title 11 of the United States Code, as amended (the 'Bankruptcy Code')." (*Id.* ¶ 17)

- On May 13, 2009, plaintiffs served a request for production of documents on LBSF.

- On May 27, 2009, LBSF moved to dismiss or stay the adversary proceeding, including on the ground that plaintiffs lack standing to litigate disputes between swap counterparties.  On the same day, HUSI showed in its motion to dismiss or stay that plaintiffs had sued the wrong party as alleged "minibond" trustee, and that plaintiffs' grievances were subject to English choice of law and choice of forum provisions and active government interest in Hong Kong that rendered this an unsuitable forum for the claims of "tens of thousands of Hong Kong investors."

- In early June 2009, without curing their jurisdictional allegations or their mistake in suing the wrong entity as trustee, plaintiffs served their Adversary Complaint on the Foreign Defendants.

- On June 9, 2009, plaintiffs stipulated to the intervention of the Official Committee of Unsecured Creditors in the Lehman bankruptcy cases in connection with plaintiffs' self-designated "core claims." (Stipulation and Consent Order Permitting Intervention of Official Committee of Unsecured Creditors, so-ordered on June 17, 2009, Dkt. 33)

- On June 10, 2009, plaintiffs sought leave to intervene in the *BNY* adversary proceeding, which they said would determine LBSF's rights under "the ***same*** Dante Principal Trust Deed LBSF contends governs Movants' rights to the Collateral in *Wong*." (*Wong* Plaintiffs' Memorandum of Law in Support of Motion to Intervene, Dkt. 7 at 3; emphasis in original)  In its opposition papers, LBSF demonstrated that plaintiffs lacked standing to assert an interest in the subject collateral — an issue that is likely to be dispositive in this case. (*See* LBSF's Opposition to Class Movants' Motion to Intervene dated June 10, 2009, Dkt. 24, at 6-17.)

- On June 15, 2009, LBSF moved the bankruptcy court for an order staying discovery pending the resolution of the motions to dismiss in this proceeding. (*See* LBSF's Motion to Stay Discovery Pending Determination of Its Motion to Dismiss the Complaint, Dkt. 31.)

- On June 19, 2009, plaintiffs stipulated to a briefing schedule they had proposed for the motions to dismiss, looking to a hearing date in late September 2009, which is now less than a month away.  (Stipulation and Order Establishing Uniform Schedule For Answers or Motion Practice and Setting Return Date, so-ordered on July 8, 2009, Dkt. 36)

- On July 9, 2009, in a brief opposing the requested discovery stay in this case, plaintiffs stated that LBSF had initiated two adversary proceedings "related to the same note program" at issue here.  (Plaintiffs' Opposition to Defendant LBSF's Motion to Stay Discovery Pending Determination of Its Motion to Dismiss the Complaint dated July 9, 2009, Dkt. 42 at 11, citing *BNY* and *Lehman Brothers Special Financing Inc.* v. *American Family Life Assurance Company*, No. 09-01261)  The bankruptcy court is scheduled to hear cross motions for summary judgment in both of those matters on November 19,

2009.  (Stipulation Regarding Briefing Schedule and Hearing for Cross Motions for Summary Judgment, so-ordered on August 20, 2009, Dkt. 38)

- In the same brief, in an effort to argue that dismissal of the complaint in this case was not "inevitable" (such that discovery should proceed), plaintiffs extensively briefed the merits of LBSF's motion to dismiss, including the pivotal question of plaintiffs' standing to assert an interest in the proceeds of collateral claimed by the bankruptcy estates.  (*Id.* at 11- 21)

- In their July 14, 2009 Reply Memorandum in support of their motion to intervene in *BNY*, plaintiffs again briefed the standing issue and reiterated that the proceedings in *BNY* and *Wong* raised the same issues regarding priority as between LBSF and noteholders, and the application of § 560 of the Bankruptcy Code to the same underlying transactions.  (Dkt. 28, at 15)

- On July 15, 2009, plaintiffs' counsel actively participated in a status conference in this case that included oral arguments on plaintiffs' motion for leave to intervene in *BNY* and LBSF's request for a stay of discovery.  A key focus of the hearing was LBSF's showing that the *Wong* plaintiffs lacked standing to assert an interest in the collateral underlying the bonds at issue in *BNY* (*see* Sloane Decl., Exh. 1 at 179-86), which plaintiffs allege (rightly or wrongly) to be the same bonds at issue in this case.  (*Id.* at 167-78)  In the course of the lengthy hearing, plaintiffs' counsel never once implied that the referral to the bankruptcy court should be withdrawn.  To the contrary, he stated on the record, "We thought it was appropriate and right to bring these claims in Your Honor's court because it's so intimately connected to the bankruptcy estate." (*Id.* at 178)

- At the July 15, 2009 hearing, Judge Peck ruled from the bench that plaintiffs lacked standing to intervene in *BNY*, observed that the same standing analysis will be required in connection with defendants' motion to dismiss in this case, and in explaining his grant of a discovery stay in this proceeding, commented that the arguments in support of those motions were "strong." (*Id.* at 195, 197)

- On July 22, 2009, the Securities and Futures Commission of Hong Kong announced that the banks from which minibond investors purchased their investments would pay eligible investors at least 60% to 70% of the face value of the bonds.  (Sloane Decl., Exh. 2)

- On July 31, 2009, plaintiffs filed the instant motion with the bankruptcy court, arguing for the first time, and contrary to their pleading, that their Adversary Complaint asserts no core claims and no related claims, and that they had not "actively participated" in bankruptcy court proceedings.  (Pl. Br. at 7 n.4, 17)  Plaintiffs filed their motion with this Court on August 3, 2009.

Just one week later, on August 10, 2009, plaintiffs argued in opposition to LBSF's motion to dismiss that it was "absurd" to suggest "that the connection between this case and the Chapter 11 proceedings is tenuous at best." (Dkt. 60, at 28)  They made no effort to rec-

-9-

oncile that argument with their directly contrary position on the instant motion. Plaintiffs also cited with approval LBSF's remark that the bankruptcy court was the "proper forum" for the *BNY* suit (which plaintiffs described as relating to "the same Saphir note program as the Minibonds"). (*Id.*)

Under all of the foregoing circumstances, it is impossible to credit plaintiffs' insistence that they have not actively participated in the bankruptcy proceedings or that the bankruptcy court has had no occasion to consider issues raised by their Adversary Complaint, or to conclude that the instant motion was timely.

B.     *Plaintiffs Satisfy No Other Criteria For Withdrawal*

Although the characterization of claims as core or non-core is relevant to a determination under 28 U.S.C. § 157(d), it is not dispositive where, as here, the additional factors set forth in *Orion*, "which fall under the broad umbrella of interests of efficiency and uniformity, weigh heavily in favor of preserving the reference of this adversary proceeding." *Enron North America Corp.* v. *Media General Inc.* (*In re Enron Corp.*), No. 04 Civ. 2527(SHS), 2004 WL 1197243, at *4 (S.D.N.Y. May 28, 2004). In any event, by alleging that their complaint presents core claims under 28 U.S.C. § 157(b) and related claims, plaintiffs irrevocably consented to proceeding in bankruptcy court and are precluded from shopping for a different forum when early rulings disappoint. *See* 28 U.S.C. § 157(c)(2); Bankruptcy Rule 7012(b); *Hiser* v. *Neumann Medical Center, Inc.* (*In re St. Mary Hospital*), 117 B.R. 125, 131 (Bankr. E.D. Pa. 1990). "Once consent has been freely given under section 157(c)(2), a party should not be entitled, once dissatisfied with the results obtained thereby, to seek more favorable review elsewhere." *In re Zachman Homes, Inc.*, 83 B.R. 633, 640-41 (Bankr. D. Minn. 1985); *see also Drew* v. *WorldCom, Inc.*, 2006 WL 2129309, at *3. This is particularly true when plaintiffs themselves selected bankruptcy court as the proper forum.

This is not to say that plaintiffs' claims should be sustained by the bankruptcy court because "subject matter jurisdiction cannot be established by waiver, consent, estoppel or failure to challenge jurisdiction early in the proceedings." *Yashiro* v. *Falchi* (*In re Falchi*), No. 97 B 43080(JLG), 97-9057A, 1998 WL 274679, at *5 (Bankr. S.D.N.Y. May 27, 1998). Rather, now that plaintiffs have *admitted* that their allegations of core and related claims are unfounded, their complaint is ripe for dismissal when defendants' motions are heard by the bankruptcy court next month. *See, e.g.*, *Enron Corp.* v. *Citigroup, Inc.* (*In re Enron Corp.*), 353 B.R. 51, 62-63 (Bankr. S.D.N.Y. 2006) (dismissal is the proper remedy where the bankruptcy court lacks jurisdiction over a claim).

Considerations of judicial efficiency and uniformity of outcome reinforce this conclusion. Under 28 U.S.C. § 157(b)(3), the determination of issues raised in an adversary proceeding is assigned in the first instance to "the judicial officer with the greatest knowledge of the claims of the parties and other parties in the liquidation." *Official Committee of Unsecured Creditors of Verestar, Inc.* v. *American Tower Corp.*, No. 05 Civ. 6268(RPP), 2006 WL 763054, at *3 (S.D.N.Y. Mar. 23, 2006); *Enron North America Corp.* v. *Media General Inc.*, 2004 WL 1197243, at *4 ("Judges of the bankruptcy courts have a wealth of experience in resolving questions of bankruptcy law and in adjudicating the interplay between bankruptcy and non-bankruptcy issues. Accordingly, it is generally preferable for the bankruptcy court to make the initial determination as to whether a claim should be classified as core or non-core.").

Given Judge Peck's demonstrated familiarity with the pending motions in this matter and with issues in other adversary proceedings that plaintiffs describe as possibly dispositive of some of their claims, the bankruptcy court should be allowed to complete its consideration of the pending motions to dismiss. In addition to the possibility that its ruling will resolve or reduce the scope of this proceeding, it bears noting that many of the grounds that

warrant dismissal (including lack of personal jurisdiction over most of the defendants, knowingly suing the wrong entity as alleged trustee, and the lack of any domestic nexus for most of plaintiffs' claims) apply to all of plaintiffs' claims, whether denominated as core or related in their complaint.  It therefore would make no sense to disaggregate and transfer some or all of the case according to plaintiffs' contradictory new characterizations.  In the event that any part of the adversary proceeding should survive the motions to dismiss, there will be time enough to consider withdrawal of reference as to issues (if any) that may be triable by a jury in this jurisdiction.  *See, e.g.*, *In re Maywood Capital, Inc.*, 07 Civ. 3128(LTS), 2007 WL 2609970, at *2 (S.D.N.Y. Aug. 30, 2007) (Swain, J.) ("Many cases are resolved short of trial, and the bankruptcy court is empowered to conduct jury trials on consent.  Withdrawal of the reference on the basis of the possible need for a district court jury trial would therefore be unwarranted and premature.") (citation omitted); *Hassett* v. *Bancohio National Bank* (*In re CIS Corp.*), 172 B.R. 748, 764 (S.D.N.Y. 1994) ("[F]or reasons of efficiency and uniformity, the motion to withdraw the reference is denied, with leave to renew once the case is ready for trial").

        Plaintiffs' observation that certain aspects of this proceeding may be subject to proposed findings of fact and conclusions of law by the bankruptcy court and *de novo* review by the district court under 28 U.S.C. § 157(c)(1) does not necessitate withdrawal.  *See In re Orion Pictures Corp.*, 4 F.3d at 1101; *Enron North America Corp.* v. *Media General Inc.*, 2004 WL 1197243, at *3.  Acceptance of plaintiffs' contrary argument would have the effect of vitiating the automatic reference to the bankruptcy court in any proceeding that includes non-core claims.

        Uniformity in bankruptcy administration would be jeopardized by having like issues, such as noteholder standing, subject matter jurisdiction, personal jurisdiction, choice of law, conflict of law, non-joinder of necessary parties, and *forum non conveniens* addressed in

both the bankruptcy court and the district court. Similarly, the goal of economical use of debtors' and creditors' resources would be defeated if this proceeding — with pending motions to dismiss tailored to plaintiffs' original, never-amended allegations — were to be transferred to district court.

Finally, the policy of deterring forum shopping militates against allowing plaintiffs to contradict their jurisdictional representations following unfavorable developments. *See In re New York Trap Rock Corp.*, 158 B.R. at 577 ("Forum shopping efforts pursued by awaiting a decision relevant to the merits and then bypassing or filing a motion to transfer should not be rewarded with success."); *Official Committee of Unsecured Creditors of the VWE Group* v. *Amlicke* (*In re VWE Group, Inc.*), 359 B.R. 441, 447 (S.D.N.Y. 2007) (denying a motion to withdraw that "involved very clear indications of tactical delays and forum shopping after the bankruptcy judge made intermittent findings adverse to the moving party"). Rule 11 considerations aside, the timing of plaintiffs' about-face "gives rise to a strong inference that [plaintiffs are] attempting to forum shop." *Drew* v. *WorldCom, Inc.*, 2006 WL 2129309, at *3. This conclusion is reinforced by the direct conflict between plaintiffs' current assertions and previous representations in their pleading, briefs, and statements in open court. As this Court said in a similar context:

> Drew's assertions on this motion also directly conflict with his representations in 2004, in his response to MCI's objection to his claim, that the Bankruptcy Court had jurisdiction over the objection and that the claim objection was a 'core proceeding' under 28 U.S.C. § 157(b). This contradiction provides further support for the inference that the motion to withdraw the reference is motivated by a desire to obtain what Drew hopes will be a more favorable forum for litigation of the substantive motions currently pending in the Bankruptcy Court.

*Id.*

## CONCLUSION

For the reasons stated above, this Court should deny plaintiffs' motion to withdraw the reference to the bankruptcy court.

Dated: August 28, 2009

                                    Respectfully submitted,
                                    CAHILL GORDON & REINDEL LLP

By: /s/ Howard G. Sloane
     Patricia Farren
     David G. Januszewski
     Joel H. Levitin
     Howard G. Sloane
80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Defendants HSBC USA Inc., HSBC Bank plc, Pacific International Finance Limited, HSBC Bank (Cayman) Limited, HSBC Holdings plc, Scott Aitken, Cereita Lawrence, Sarah Coombs, Janet Crawshaw, and Sylvia Lewis*